Opinion of the court delivered by
Judge Whyte.
This was an action of trover brought by the plaintiff in error, Montgomery, against the defendant in error, in October, 1826,.in the circuit court of Jackson county, for the conversion of a negro girl named Matilda. A verdict and ■judgment was rendered for the defendant, Scanland, and an appeal in error taken to this court.
A bill of exceptions taken on the trial, showed that the negro in question was born the property of the plaintiff; that about the year 1814, Price Butler intermarried with the defendant’s daughter, and in the year 1816, Matilda was permitted to' stay at Butler’s; and that she continued to stay there until the spring of 1822, when the plaintiff took her home to his own house. Butler about this time, or soon afterwards, became indebted, and his property was all taken and sold by his creditors. Smith recovered ajudgment against Butler, at November term of the Jackson couhty court, 1823, for $534 debt, and $21 damages and costs; upon which execution issued from the same term, and $166 made thereon by levy and sale of property. On the return of this execution an alias was issued, and returned “nothing found.” A number of other executions for the unsatisfied balance issued, and were indorsed thus: “I, James Young, sheriff of Jackson county, do hereby authorize Thomas Scanland to execute and collect the within fi. fa. Given under my hand and seal, this 4th day of September, 1826. James Young, sheriff [n. s.J” “Came to hand the 10th September, 1826; levied on one negro girl, named Matilda, *338 the property of Price Butler, and sold the 19th day of October, 1826, to Samuel G. Smith, for one hundred and ten dollars. Thomas Scanland, Deputy SheriiF.” It further appeared upon the bill of exceptions, that during the reading of the record, Sam. G. Smith against Price Butler, the plaintiff's counsel objected to the deputation from Young, the sheriff, to the defendant, and had Young examined, who deposed that when the execution was put into his hands, he had no objection to the levying on the negro, but was informed that a known officer would not be permitted to levy on her; that plaintiff claimed her and would prevent a levy. He wrote the deputation, all but the name, “Thomas Scanland,” and gave it to Joel L. Settle, telling him to fill the blank with any person’s name he could get to levy it, and not to hold the witness responsible; to wit, Young the sheriff. Plaintiff’s counsel (says the record) having made the objection, it was by the court overruled, and the record finished. The witness further deposed, that Price Butler became his deputy in November, 1819, and acted till February, 1821, during which time he became embarrassed, fell in debt to witness $600, &c. &c.
The court charged the jury, that the record as it stands in relation to the execution, is beyond the reach of contradiction; beyond the influence of the testimony to impeach it. The statute of limitations has no influence in the case, &c. This is the part of the charge that is particularly objected to, and therefore it is not deemed necessary to notice the remaining part.
The,, negro, Matilda, continued in the plaintiff, Montgomery’s possession, from the spring of 1822, until she was taken into possession by the defendant, Scanland, under the deputation of the sheriff', as above stated, in September or October 1826.
Two points are discussed upon argument in this cause: first, the validity of the deputation by virtue of which the defendant acted in the matter; and secondly, the effect of the adverse possession of Montgomery, the plain-tiffin error, from the spring of 1822 to the fall of 1826.
*339 As to the first, the facts are: Young, the sheriff of Jackson county, makes a deputation in form, except the omitting the name of the person tobe deputed, leaving a blank for the name to be inserted afterwards, and delivered it to one Joel L. Settle, telling him to fill the blank with any person’s name he could get to levy it, and not hold him, the sheriff responsible.
Such is the authority affected to be given. When, or where, or by whom this form of a deputation was completed by the insertion of the name, “Thomas Scam-land,” the record does not inform us, but it is to be pre^ sumed that it was filled up by Settle, when he found his man for the purpose, the defendant.
The sheriff of Jackson county had at that time, two •regular deputies; and admitting the power of a sheriff to make a deputy extraordinary upon particular occasions, still that power does not cover the present case; Scan-land is not the deputy of the sheriff, but the deputy of Settle. Settle appointed him; his judgment and discretion selected and pointed him out as a proper person for .the purpose to levy on this negro, not the judgment and discretion of the sheriff, who had no more agency in the nomination than any stranger whatever to the transact fion. Let it be further admitted, that by what took place between the sheriff and Settle, with the confidence re-posedin the latter by the former,Settle was made his deputy; and to go this far would be a very strained point, yet the cause would not be made better for the defendant,
Upon this view of derivative powers, the defendant, Scanland, would be the deputy of the deputy sheriff; a transmission of powers which the law does not acknowlt edge, but denies. Its express negative is to be found in the books, where it is decided that a deputy cannot make a deputy. This being the rule of law, its principle applies with greater force to a sheriff than to most other persons. The sheriff is the known minister of the law; he has much in his power; not only the pecuniary interests of the community, but the public peace and quiet, as well as public satisfaction, depend much upon the *340 exercise of his official duty and authority. Menee the law holds him in high estimation, requiring all writs and processes from the courts of justice to be executed by him, sanctioning his acts, and giving evidence to his returns, not permitting them in general to be questioned, or even averred against. In such high consideration indeed, is the sheriff held by our law, adding in that respect to the common law, that it is only on urgent occasions, that it will dispense with his own personal services, or that of his two regular deputies, and permit him to act by another under a special deputation. See the act of Assembly of 1821, ch. 12. This confidence which the law reposes in the correct deportment of its officer, the sheriff, is hostile to special deputations. In doing so, it respects his judgment, his prudence, his discretion, his responsibility, and for the purpose of avoiding their absence which maybe found in a special deputation, has restrained the limit prescribed by the above act of 1821 fo urgent occasions, and in this respect abridging his power at common law. If the law only admit of a special deputy of the sheriff hirnself on urgent occasions, surely the very idea of a deputy of that deputy, is not to be tolerated by it.
The authority cited by the counsel, from 6 Term Rep. 122, of Housin vs. Burrow, is a much stronger case than the one before this court. There the sheriff directed his warrant to one More and all his other officers, to arrest .the defendant, Burrow. More afterwards inserted Cooke’s name, who executed it, and who was one of the sheriff’s officers, after it was signed and sealed by the sheriff. The court by Lord Kenyon, Chief Justice, said, this was .clearly an illegal arrest, and it is proper it should be made known in the most solemn manner. And Lord Kenyon there mentions a cause of late occurrence, where a gentleman who had obtained a sheriff’s warrant to arrest his debtor, struck out the officer’s name and inserted his own; he was shot by the defendant in arresting him, and the homicide was held not to be murder, because the arrest was illegal; it was at the most man *341 slaughter. In such cases, say the court, the law does not throw any protection around the person who attempts to .arrest by an illegal warrant. So here, in the present case, the law gives no protection to Scanland, the assumed officer; he is no deputy, and stands on the same ground as a private individual without process.
Marchbanks, lor the plaintiff in error.
Rucks, for defendant in error.
This first point disposing of the error, it becomes unnecessary to enter into the second.
The judgment and verdict must be set aside, and the cause sent down to the circuit court of Jackson county to be tried; when the circuit judge will charge the law, as it is considered to be in this opinion.
Judgment reversed,